NEW JERSEY BUILDERS ASSOCIATION, PLAINTIFF–APPEL-LANT, v. LEONARD S. COLEMAN, JR., COMMISSIONER, DE-PARTMENT OF COMMUNITY AFFAIRS, RESPONDENT-RE-SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 7, 1988—Decided June 30, 1988.

24

Before Judges DEIGHAN, R.S. COHEN and LANDAU.

*Stewart M. Hutt,* argued the cause for appellant (*Hutt & Berkow,* attorneys; *Stewart M. Hutt* of counsel; *Stewart M. Hutt* and *Mark Williams,* on the brief).

*Elizabeth J. Vaughn,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Elizabeth J. Vaughn* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Appellant N.J. Builders Association (NJBA) challenges regulations adopted by the Commissioner of the Department of Community Affairs (DCA) which amend the state energy subcode (*N.J.A.C.* 5:23–3.18) by replacing its thermal efficiency standards with standards required by the U.S. Farmers Home Administration (FmHA). *See* 19 *N.J.R.* 1793, effective October 5, 1987. NJBA argues that DCA's authority under the State Uniform Construction Code Act (UCCA), *N.J.S.A.* 52:27D–119 *et seq.,* is limited to adopting as a subcode the entire model code of nationally recognized organizations and that it lacks authority to substantively amend the subcodes.

Respondent State of New Jersey, Department of Community Affairs (DCA) does not deny that it might lack authority under the UCCA to directly amend a subcode once adopted. Rather, DCA claims that it obtained the authority it needed to modify

the energy subcode by powers transferred from the Department of Energy (DOE) who between July 11, 1977 and August 29, 1986 was responsible for adopting and amending the energy subcode. *L.*1977, *c.* 146; *N.J.S.A.* 52:27F-1 *et seq.* DCA further argues that the regulations at issue here are not materially different from regulations promulgated by DOE when it had administrative responsibility for the energy subcode and that under the Agency Transfer Act, regulations made prior to a state agency transfer remain in effect until amended or repealed. *N.J.S.A.* 52:14D-6.

Administrative agencies have limited jurisdiction and actions beyond an agency's jurisdiction are *ultra vires.* *D.S. v. East Brunswick Tp. Bd. of Ed.,* 188 *N.J.Super.* 592, 597 (App.Div. 1983) certif. den. 94 *N.J.* 529 (1983). We recognize that a finding of *ultra vires* is disfavored, *see e.g., N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561 (1978); *In re N.J. Board of Public Utilities,* 200 *N.J.Super.* 544, 557 (App. Div.1985). Notwithstanding this, after carefully considering the arguments and briefs of counsel, we hold that the DCA Commissioner exceeded his authority under *N.J.S.A.* 52:27D-123 by substantively amending the State's energy subcode.[1]

*N.J.S.A.* 52:27D-123 empowers the DCA Commissioner to adopt a State Uniform Construction Code consisting of subcodes which "may be adopted individually by the commissioner as he may from time to time consider appropriate." *N.J.S.A.* 52:27D-123(b). It further provides that:

...subcodes shall be adoptions of the model codes of the Building Officials and Code Administrators International, Inc., the National Electrical Code, and the National Standard Plumbing Code, provided that for good reasons, the Commis-

---

[1]We are not called upon here to express our view on the ability of DCA to make changes required either as a matter of law or for the purpose of properly integrating codes that otherwise conflict with one another or overlap in jurisdiction. It has been argued elsewhere that the authority to make such non-discretionary changes is inherent in the statutory mandate to adopt a uniform-harmonious system of codes. *See* Metzger, "The Uniform Construction Code Act: A Progress Report," 99 *N.L.J.* 929 (1976).

sioner may adopt as a subcode a model code or standard of some other nationally recognized organization upon a finding that such model code or standard promotes the purposes of this act. The initial adoption of a model code or standard as a subcode shall constitute adoption of any subsequent revisions or amendments thereto.

UCCA's legislative history reflects a clear intent to limit the DCA Commissioner's authority to adopting a model code in its entirety while relying on a national process for amendments to that subcode. When the UCCA was under consideration by the Legislature, Sydney L. Willis, representing DCA and the Governor's office, testified at a public hearing that "our bill[2] ... allows ... for no local adaptations and no state adaptations of the standard code or the subcode once they are adopted.... " He went on to say:

We will rely on a national process, a national code which has the procedure for continuous updating. We will be members of the process for updating. There will be representation there, as well as from other states in the discussions of what amendment should be provided each year. We will be a part of that discussion and we will rely on the outcome of that essentially democratic process.

At a subsequent point in his statement, Willis was asked, "What if New Jersey then objected to a feature of the BOCA code, ... can we [New Jersey] make any modifications then?" Willis responded: "No. The options provided under the bill would be simply to reject the entire subcode and adopt a new subcode under the same procedure provided here-with good reason promulgated by the department."

In September 1977 the Legislature amended UCCA to include a mechanism for recommending changes or amendments to those national model codes that had been adopted as subcodes by the DCA Commissioner. Significantly, Senate Bill S-1345 as originally proposed authorized the Commissioner to amend the state's uniform construction code. The proposed amendments

---

[2]Willis was testifying at a Senate Labor, Industry and Professions Committee hearing on S-1187, the companion bill to A-1299, the bill adopted by the Legislature. The provisions in the two bills were essentially identical insofar as DCA's authority to adopt subcodes was concerned.

also would have provided that subcodes could be adoptions of model codes in total *or* with specific modifications thereof. Both of these amendments were deleted from the final bill and when he signed S–1345 into law, Governor Byrne observed that "the bill provides a procedure by which the code and its subcodes may be amended ... legislation does not allow amendments to be made individually to the subcodes. Amendments can be made only through the adoption of a model code or standard." *L.*1977, *c.* 221, § 5, codified at *N.J.S.A.* 52:27D–123(c).

Accordingly, it appears indisputable that the Legislature intended to limit the DCA Commissioner's authority under the UCCA to adopting a model code in its entirety and that any amendments to the subcode were to occur through a national process.

BOCA's Basic/National Energy Conservation Code was adopted by DCA in 1977 and by DOE, effective August 13, 1978. The October 5 regulations on appeal here delete BOCA's thermal efficiency standards and replace them with higher standards required by FmHA. Thus, with these regulations, the DCA Commissioner is directly amending the energy subcode, which is in excess of his authority under the UCCA. Where a rule exceeds the scope of the authority vested in the agency, it is illegal and void. *Common Cause v. N.J. Election Law Enforce. Comm'n,* 74 *N.J.* 231 (1977); *D.S. v. East Brunswick Tp. Bd. of Ed., supra,* 188 *N.J.Super.* at 597.

Additionally, we are not persuaded by DCA's argument that it obtained the authority it needed to amend the energy subcode from DOE. To sustain this argument, we would have to find that the Legislature empowered DOE to directly amend New Jersey's energy subcode and we do not believe that to be the case.

When DOE was created by the Legislature on July 11, 1977, the Legislature transferred to it "all the functions, powers and duties heretofore exercised by the Department of Community

Affairs and the Commissioner thereof relating to the adoption, amendment and repeal of the energy subcode of the State Uniform Construction Code ..." *L.*1977, *c.* 146, codified at *N.J.S.A.* 52:27F–27. DCA argues that the Legislature expressly granted the DOE Commissioner authority to design, implement and enforce a program for energy conservation, *see N.J.S.A.* 52:27D–119, and that the DOE Commissioner drew on this authority when amending its energy subcode. Although there is some surface appeal to this argument, it is outweighed by the legislative history surrounding the UCCA which as we discussed above, shows a clear legislative intent to preclude direct amendments to the various subcodes. A court is to presume that the Legislature is thoroughly conversant with its own legislation. *Petrozzino v. Monroe Calculating Machine Co.*, 47 *N.J.* 577 (1966). That presumption must be accorded even greater deference inasmuch as the same senator sponsored both the acts establishing DOE and implementing the 1977 amendments to UCCA (S–1345). These two bills were passed within six months of one another and we must assume that when the Legislature transferred to DOE "all the functions, powers and duties heretofore exercised by the Division of Community Affairs," it was aware and intended that the Commissioner of DOE would have the same limited authority that the DCA Commissioner had, *i.e.*, the authority to adopt a model subcode in its entirety but not to directly amend it. Because of our conclusion that DOE also lacked the authority to directly amend the energy subcode, we do not reach DCA's second argument that its October 5 regulations are essentially the same as those promulgated by DOE and should remain in effect under the Agency Transfer Act.

We deem the October 5, 1987 regulations, promulgated at 19 *N.J.R.* 1793, and contained in *N.J.A.C.* 5:23–3.18, invalid insofar as they contain provisions replacing BOCA's thermal efficiency standards with those required by FmHA. To the extent declared invalid the October 5, 1987 regulations shall not be enforced, and the BOCA thermal efficiency standards shall

remain in effect. In order to avoid public confusion, the regulation shall be forthwith amended accordingly.

WAWA FOOD MARKET, A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFF-RESPONDENT, v. PLANNING BOARD OF THE BOROUGH OF SHIP BOTTOM, DEFENDANT-APPELLANT.